IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ANTONIO DUKE, Individually, and all others**
**similarly situated**                                                                                     **PLAINTIFFS**

v.                        Case No.: 4:22-cv-00056-LPR

**POPLAR GROVE OPERATIONS, LLC,**
**D/B/A THE GREEN HOUSE COTTAGES**
**OF POPLAR GROVE**                                                                                    **DEFENDANT**

## ORDER

Plaintiff Antonio Duke has filed this lawsuit against his former employer, Poplar Grove Operations, LLC ("Poplar Grove"). He alleges that Poplar Grove violated the Fair Labor Standards Act ("FLSA"), violated the Arkansas Minimum Wage Act ("AMWA"), and committed the torts of conversion and fraud.[1] Poplar Grove has filed a Motion to Compel Arbitration and to Dismiss or Stay Litigation Pending Arbitration.[2] For the reasons provided below, Poplar Grove's Motion is GRANTED.

## BACKGROUND

Mr. Duke worked for Poplar Grove as a certified nursing assistant.[3] He alleges that he regularly worked "double shifts and 80 or more hours a week,"[4] but "was not getting paid at overtime rates for" hours worked after reaching the forty-hours-per-week threshold.[5] He also

---

[1] Compl. (Doc. 2). Mr. Duke also alleges that Poplar Grove "has failed to pay last wages" and that he is "entitled to an amount equal to his last wages." *Id.* ¶¶ 21–23. Mr. Duke does not make clear whether this claim arises under the FLSA, the AMWA, some other statute, or state common law.

[2] Def.'s Mot. to Compel Arbitration (Doc. 4).

[3] Compl. (Doc. 2) ¶ 6; Answer (Doc. 3) ¶ 6; Br. in Supp. of Def.'s Mot. to Compel Arbitration (Doc. 5) at 4.

[4] Compl. (Doc. 2) ¶ 9.

[5] *Id.* ¶ 11. Mr. Duke alleges that Poplar Grove "had a scheme" that "made it very difficult or impossible to tell how many hours one was being paid for and at what rates one was being paid." *Id.* ¶ 8.

alleges that Poplar Grove required him "to work [unpaid] through breaks and lunches."[6] Mr. Duke says that when he "complained up the chain of command,"[7] Poplar Grove "falsely claimed that [Poplar Grove was] in a program that allowed [it] not to pay overtime rates."[8] Mr. Duke also says he "complained to the Department of Labor, who did an investigation."[9] Mr. Duke alleges that he was terminated "within a very short time after that investigation" and "never paid for all of his time or at appropriate rates."[10] The foregoing alleged facts form the basis for all of Mr. Duke's legal claims.

At the beginning of his employment with Poplar Grove, Mr. Duke signed an arbitration agreement (the "Agreement").[11] The Agreement provides that it "applies to any claim, controversy, or dispute arising out of or related to [Mr. Duke's] employment or the termination of [Mr. Duke's] employment with [Poplar Grove] . . . ."[12] The Agreement specifically (but not exclusively) applies to "disputes about compensation, meal breaks, rest periods, benefits, harassment, and termination of employment . . . and disputes or claims arising under the . . . Fair Labor Standards Act . . . [and] state statutes covering the same or similar subject matters . . . and all other state common law claims."[13] Mr. Duke and Poplar Grove specifically agreed "to bring any disputes to arbitration on an individual basis only, and not on a class, [or] collective . . .

---

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 12.

[8] *Id.* ¶ 13.

[9] *Id.* ¶ 14.

[10] *Id.* ¶ 15.

[11] *See* Ex. 1 (The Agreement) to Def.'s Mot. to Compel Arbitration (Doc. 4-1) (showing that Mr. Duke signed the Agreement on September 25, 2019); Ex. 2 (Decl. of Jim Towers) to Def.'s Mot. to Compel Arbitration (Doc. 4-2) ¶¶ 4–5 (Poplar Grove Administrator declaring that Mr. Duke's employment began on September 25, 2019).

[12] Ex. 1 (The Agreement-Attachment 1) to Def.'s Mot. to Compel Arbitration (Doc. 4-1) § 1, ¶ 1.

[13] *Id.* §1, ¶ 4.

basis."[14]  Moreover, Mr. Duke and Poplar Grove "expressly waive[d] any ability to bring a Class Action . . . [or] a collective action in any forum."[15]

## DISCUSSION

The question before the Court is primarily governed by the Federal Arbitration Act ("FAA").[16]  "[W]hen reviewing an arbitration clause, [the Court] ask[s] only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement."[17]  "[A]rbitration agreements are to be enforced unless a party can show that it will not be able to vindicate its rights in the arbitral forum."[18]

### I. Validity of the Agreement

"Whether an arbitration agreement is valid is a matter of state contract law."[19]  Both sides rely in relevant part on Arkansas state law; neither party argues that any other state's law would be applicable to determining the validity of the Agreement.[20]  Mr. Duke makes several different arguments in an effort to invalidate the Agreement.  His arguments are not persuasive.

---

[14] *Id.* § 6, ¶ 1.

[15] *Id.* § 6, ¶¶ 2–3.

[16] Aside from a drive-by discussion of Arkansas's Uniform Arbitration Act, *see* Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration (Doc. 8-1) at 2, Mr. Duke does not seriously contest the FAA's applicability.  *See* Compl. (Doc. 2) ¶ 2 (alleging that Poplar Grove "is an industry substantially impacting interstate commerce"); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (stating that the FAA "provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause," and applies when, "in the aggregate[,] the economic activity in question would represent a general practice . . . subject to federal control") (internal quotations omitted); Ex. 2 (Decl. of Jim Towers) to Def.'s Mot. to Compel Arbitration (Doc. 4-2) ¶¶ 2–3 (Poplar Grove Administrator declaring that Poplar Grove provides "health care treatment and daily personal care" that is significantly funded by "federal Medicare and Medicaid programs"); *see also* Ex. 1 (The Agreement-Attachment 1) to Def.'s Mot. to Compel Arbitration (Doc. 4-1) §1, ¶ 2 ("This Agreement is made pursuant to a transaction involving interstate commerce and is governed by the Federal Arbitration Act."); *Pest Mgmt., Inc. v. Langer*, 369 Ark. 52, 59–60, 250 S.W.3d 550, 556 (2007) (holding that the FAA governed an arbitration agreement because "the parties contracted that the subject matter concerned a 'transaction involving interstate commerce'").

[17] *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004).

[18] *Id.*

[19] *Id.*

[20] *See* Br. in Supp. of Def.'s Mot. to Compel Arbitration (Doc. 5) at 8 (reciting Arkansas's elements of a contract); Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration (Doc. 8-1) (relying on federal and Arkansas law).

Mr. Duke's first argument is that the Agreement "is unconscionable in that it shifts the burden of proof."[21] Mr. Duke is referring to a provision of the Agreement that states "[t]he burden of proof shall at all times be on the party seeking relief."[22] According to Mr. Duke, this provision unconscionably shifts the burden of proof because Poplar Grove has pled the defenses of "exemptions and good faith" under the FLSA and other affirmative defenses.[23] Mr. Duke believes that, under the terms of the Agreement, he will still hold the burden of proof even as to Poplar Grove's asserted affirmative defenses. But Mr. Duke's argument relies on an unreasonable interpretation of the Agreement. As Poplar Grove notes, the Agreement's burden-of-proof provision is "a basic recitation of the burden of proof in civil litigation."[24] Poplar Grove appropriately concedes that when it "is invoking a true affirmative defense, it is the party seeking relief and would have the burden of proof."[25]

Mr. Duke's second argument is that the Agreement is unenforceable because he may have to pay a share of the costs of arbitration.[26] The Supreme Court has instructed that when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."[27] The Eighth Circuit has further provided that Mr. Duke bears the burden of showing "that it is likely, as

---

[21] Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration (Doc. 8-1) at 1.

[22] Ex. 1 (The Agreement-Attachment 1) to Def.'s Mot. to Compel Arbitration (Doc. 4-1) § 5, ¶ 4.

[23] Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration (Doc. 8-1) at 2.

[24] Reply in Supp. of Def.'s Mot. to Compel Arbitration (Doc. 11) at 5.

[25] *Id.*

[26] Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration (Doc. 8-1) at 3.

[27] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

opposed to merely speculative, that the prohibitive costs will actually be incurred."[28]  Mr. Duke has provided no such evidence.[29]

Instead, Mr. Duke has asked the Court to stay this Motion and give him "time to conduct discovery to determine if he is at risk of paying half the arbitration fees and costs."[30]  But such discovery is unnecessary in the circumstances of this case.  Under the terms of the Agreement, whether Mr. Duke will have to pay a share of the arbitration expenses at all is a legal question:

> Where required by law, [Poplar Grove] will pay all of the arbitrator's fees and arbitration fees.  If [Poplar Grove] is not required by law to pay all of the arbitrator's fees and arbitration fees, the responsibility for paying those fees will be divided between the parties in accordance with applicable law.  The arbitrator will resolve any dispute regarding fees or the division of fees.[31]

There is no reason that Mr. Duke could not have included a legal argument in his response brief showing that the "applicable law" would put him in the position of having to split the costs of arbitration with Poplar Grove.  He failed to do so.  Moreover, even if Mr. Duke will be responsible for paying a share of the costs of arbitration, the Agreement itself makes sure his share will not be unconscionable.  If his share is so large an amount that it would be considered unconscionable to make him pay, that is a legal argument for the arbitrator to consider when "resolv[ing] any dispute regarding fees or the division of fees."[32]

Mr. Duke's final argument is that the Agreement "requires confidentiality, but this is unconscionable in that it gives an advantage in terms of information to the employer, deprives [Mr.

---

[28] *Torres v. Simpatico, Inc.*, 781 F.3d 963, 969 (8th Cir. 2015).

[29] *See id.* (concluding that an American Arbitration Association ("AAA") general fee schedule, an AAA study of average rates, and attorney's affidavit that estimated the expected costs did "not constitute the 'specific evidence' necessary to establish that individual arbitration is cost prohibitive . . .").

[30] Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration (Doc. 8-1) at 3.

[31] Ex. 1 (The Agreement-Attachment 1) to Def.'s Mot. to Compel Arbitration (Doc. 4-1) § 8.

[32] *Id.*

Duke] of the right to a fair and public trial, and in that FLSA cases cannot be resolved without approval from either the Department of Labor or a District Court."[33] Mr. Duke does not explain how confidentiality will give the employer an information advantage. Nor does Mr. Duke explain how the Agreement's confidentiality clause negatively impacts his right to a fair and public trial in a way unique from any enforceable arbitration agreement. Finally, any argument that Mr. Duke's FLSA claims cannot be arbitrated is squarely foreclosed by the Supreme Court and Eighth Circuit.[34]

## II. Scope of the Agreement

The Eighth Circuit directs the Court to liberally construe arbitration agreements, "resolving any doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[35] To resolve this issue, the Court asks "whether the arbitration clause is broad or narrow."[36] If the clause is broad, the Court must send the claim to arbitration "as long as the underlying factual allegations simply touch matters covered by the arbitration provision."[37]

---

[33] Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration (Doc. 8-1) at 3.

[34] *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018) (enforcing arbitration agreement of FLSA claims); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054 (8th Cir. 2013) (concluding "that arbitration agreements containing class waivers are enforceable in FLSA cases"). One of the two out-of-circuit cases that Mr. Duke cited on this point actually involved a court *granting* a motion to compel arbitration of FLSA claims. *See Longnecker v. Am. Express Co.*, 23 F. Supp. 3d 1099, 1112–13 (D. Az. 2014). The other case did not involve arbitration at all. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (holding that "parties cannot settle their FLSA claims through a private stipulated dismissal" under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) without the approval of the district court or the Department of Labor).

[35] *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873–74 (8th Cir. 2018) (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).

[36] *Id.* at 874 (quoting *Unison*, 789 F.3d at 818).

[37] *Id.* (quoting *Unison*, 789 F.3d at 818).

The Agreement is broad; it states:

> [T]his Agreement requires that any claim, controversy, or dispute arising out of or related to your employment with [Poplar Grove] be resolved by an arbitrator though final and binding arbitration[.]
>
> . . .
>
> Claims, controversies, or disputes arising out of or related to your employment with [Poplar Grove] include, without limitation: disputes about your employment relationship with [Poplar Grove], including disputes about compensation, meal breaks, rest periods, benefits, harassment, and termination of employment . . . disputes arising under . . . the Fair Labor Standards Act . . . [and] state statutes covering the same or similar subject matters, all other state statutory claims; and all other state common law claims.[38]

The Eighth Circuit has routinely held that similar arbitration language is broad.[39] Indeed, such language "constitutes the broadest language the parties could reasonably use to subject their disputes to" arbitration.[40] Mr. Duke's claims arise from and relate to compensation, meal breaks, rest periods, retaliation, and termination of his employment.[41] He brings his lawsuit under the FLSA, the AMWA (a state statute covering similar subject matter to the FLSA), and state common law claims. Mr. Duke's factual allegations and legal claims clearly fall within the scope of the Agreement.[42]

---

[38] Ex. 1 (The Agreement-Attachment 1) to Def.'s Mot. to Compel Arbitration (Doc. 4-1) at §1, ¶¶ 2, 4.

[39] *See, e.g.*, *Parm*, 898 F.3d at 874 ("Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad.") (quoting *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017)).

[40] *Id.* (quoting *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997)).

[41] Compl. (Doc. 2) ¶¶ 6–16.

[42] Mr. Duke cobbles together irrelevant portions of the Agreement and inapplicable state law in an effort to argue that this dispute somehow does not fall within the Agreement. *See* Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration (Doc. 8-1) at 1 (discussing the Agreement's exclusion of claims that arise under the Dodd-Frank Wall Street Reform Act and the Consumer Protection Act); *id.* at 2 (discussing Arkansas's Uniform Arbitration Act). Mr. Duke is wrong. He fails to explain how his claims in this case are in any way related to the Dodd-Frank Wall Street Reform Act or the Consumer Protection Act. His brief discussion of Arkansas's Uniform Arbitration Act is irrelevant because the arbitration question is primarily governed by the FAA—a point he never directly contests and (at the very least) implicitly concedes. *See supra* note 16.

## CONCLUSION

Poplar Grove's Motion to Compel Arbitration and to Dismiss or Stay Litigation Pending Arbitration is GRANTED. The dispute must be submitted to binding arbitration as set forth in the Agreement. The Court STAYS this case pending resolution of the arbitration. The Clerk is directed to administratively terminate this case. It will be reopened upon the request of either party at the conclusion of arbitration.

IT IS SO ORDERED this 13th day of May 2022.

                                                      _____
                                                      LEE P. RUDOFSKY
                                                      UNITED STATES DISTRICT JUDGE